**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

FRANCES CHAMPION,                                      Case No. 1:17-cv-789

        Plaintiff,                                          Black, J.
                                                                          Bowman, M.J.
        v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Frances Champion filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents five claims of error, all of which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be because it is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff applied for Supplemental Security Income in May 2014, ultimately alleging disability beginning in December 2011 (Tr. 10, 163-167, 250) due to physical and mental impairments. Plaintiff later amended her alleged disability onset date to July 8, 2014. After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge. ("ALJ"). On August 19, 2016, ALJ Joseph Hajjar held an evidentiary hearing, by video, at which Plaintiff appeared with counsel. The ALJ also heard testimony from impartial vocational expert

1

Barry J. Brown. (Tr. 10). On October 3, 2016, the ALJ issued denied Plaintiff's applications in a written decision. (Tr. 10-24).

Plaintiff was born in 1979 and was 34 years old at the time her application was filed. She graduated high school and has past relevant work as an office clerk, data entry clerk, tax clerk and administrative clerk. (Tr. 22, 38). She alleges disability primarily due to migraine headaches, pseudotumor cerebri, seizures, depression and anxiety.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "pseudo tumor cerebri, bipolar disorder, migraines, seizure disorder, and anxiety disorder." (Tr. 12). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform light work as follows:

> She can never climb ladders, ropes, or scaffolds. She can occasionally crawl and stoop. She can never be exposed to unprotected heights, moving mechanical parts, and can never engage in commercial driving. She can tolerate occasional exposure to dust, odors and fumes, and pulmonary irritants, occasional exposure to vibration, and exposure to moderate noise levels. She is limited to performing simple tasks, but not at production rate pace. She can have frequent interaction with supervisors and co workers and occasional interaction with the public and can tolerate routine workplace changes.

(Tr. 16). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that while Plaintiff is unable to perform her past relevant work, significant other jobs exist in the national economy that Plaintiff could performed including router,

2

merchandise marker, and routing clerk. (Tr. 24, 50). Accordingly, the ALJ determined that Plaintiff is not under disability as defined in the Social Security Regulations and is not entitled to SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) improperly evaluating Plaintiff's migraine headaches and pseudo tumor cerbri; 2) improperly evaluating Plaintiff's bipolar disorder and anxiety;[1] 3) failing to give controlling weight to Plaintiff's treating physician; 4) improperly evaluating Plaintiff's credibility; and 5) committing various vocational errors. Upon close analysis, I conclude that Plaintiff's assignments of error are not well-taken.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported

---

[1] Plaintiff's first and second assignments of error both assert that the ALJ erred in finding that Plaintiff could sustain a 40 hour work week due to his impairments. As such, those errors will be considered together.

3

by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national

economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors**

At the outset the undersigned notes that the record indicates that Plaintiff filed a prior application for disability benefits, which resulted in a non-disability determination by another ALJ on February 17, 2010.  As such, in this matter ALJ Hajjar applied the principles set forth in *Drummond v. Commissioner of Social Security,* 126 F.3d 837 (6th Cir. 1997), and Social Security Acquiescence Ruling ("AR") 98-4(6), which requires the ALJ to adopt the prior decision RFC – which found Plaintiff capable of a reduced range of light work – except to the extent that any new and material evidence documented a change in Plaintiff's condition. (Tr. 10, 97).

*1. Ability to sustain a 40 hour work week.*

Plaintiff first contends that her pseudo tumor cerebri, migraine headaches, bipolar disorder and anxiety prevent her from sustaining a 40-hour work week.  As such, Plaintiff contends that the ALJ's RFC assessment is not substantially supported.

In support of this assertion, Plaintiff cites to her testimony that she suffers from headaches three to four times a week and that each headache lasts one to two days.

5

(Tr. 43, 46). Plaintiff notes that in 2013, Dr. Anthony, her treating neurologist, described her headaches as "intractable." (Tr. 262). Plaintiff further notes that her headaches were chronic in 2016. Plaintiff also points to Dr. Rorick's finding that her impairments would cause her to miss more than two days of work per week. In light of the foregoing, Plaintiff contends that the ALJ erred in failing to find that her headaches would cause her to miss too much work to sustain gainful activity.

Plaintiff further contends that the ALJ's RFC finding failed to properly consider Dr. Chiappone's findings that her mental impairments result in moderate limitations maintaining attention and concentrations. Plaintiff appears to assert that such moderate limitations would preclude her from sustaining 40-hour work week. Upon careful review, the undersigned finds that Plaintiff's contentions are unavailing.

Notably, and as more fully explained below, the objective evidence does not support Plaintiff's complaint that her headaches would cause her to miss more than two days per week. As noted by the Commissioner, the ALJ based his assessment of Plaintiff's RFC upon the overwhelmingly normal objective findings – both physical findings and mental status findings – made by Plaintiff's treating neurologists Dr. Rorick, Dr. Anthony, and Dr. Vij, made over an almost three-year period from December 2013 through August 2016, as well as the normal mental status examination findings noted by various other treating sources. (Tr. 18, 20). As the ALJ correctly noted, Dr. Anthony consistently made all normal findings, including normal neurologic findings, (Tr. 18, 264-265, 268-269, 275-276), and Dr. Rorick's examinations likewise produced all normal findings (Tr. 18, 397-398, 405-406, 413-414, 750-751, 759-760).

Furthermore, the ALJ's findings reasonably accommodated Dr. Chiappone's opinion about Plaintiff's concentration and attentional difficulty. Notably, the ALJ and the reviewing psychologists agreed that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace, (Tr. 15, 69, 84), and as the ALJ explained in the decision, he specifically limited Plaintiff in her RFC "to performing simple tasks, but not at a production rate pace," and to "routine workplace changes" based on that moderate limitation. (Tr. 16, 20).

For these reasons, the undersigned finds that the ALJ's decision is substantially supported in this regard.

*2. Evaluation of Opinion evidence*

Plaintiff next argues that the ALJ failed to properly weigh the opinion evidence. Specifically, Plaintiff asserts that the ALJ erred in assigning little weight and/or only some weight to the findings of Plaintiff's treating sources.[2]

In evaluating the opinion evidence, the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart,* 192 Fed. Appx. 456, 461 (6th Cir.2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)).

---

[2] As noted above, Plaintiff breaks this down into two separate errors in her statement of errors. For the Court's convenience, they will be addressed together.

It is well established that the "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner of Social Sec.,* 581 F.3d 399, 406 (6th Cir.2009) (quoting *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir.2004). A finding by the ALJ that a treating physician's opinion is not consistent with the other substantial evidence in the case record "means only that the opinion is not entitled to 'controlling weight,' *not that the opinion should be rejected."* Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4 (emphasis added). "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley,* 581 F.3d at 408. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(d)(2)(i)(ii); 416 .927(d)(2)(i)(ii); *Wilson,* 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d) (3)-(6), 416.927(d)(3)-(6); *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir.2004).

The ALJ must satisfy the clear procedural requirement of giving "good reasons" for the weight accorded to a treating physician's opinion: "[A] decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the

8

treating source's medical opinion and the reasons for that weight.' Social Security Ruling 96–2p, 1996 WL 374188, at *5 (1996)." *Wilson,* 378 F.3d at 544. The specific reasons requirement exists not only to enable claimants to understand the disposition of their cases, but to ensure "that the ALJ applies the treating physician rule and permit[ ] meaningful review of the ALJ's application of the rule." *Id.* Only where a treating doctor's opinion "is so patently deficient that the Commissioner could not possibly credit it" will the ALJ's failure to observe the requirements for assessing weight to a treating physician not warrant a reversal. *Id.* at 547. Here, the ALJ's decision properly assessed the opinion evidence in accordance with Agency regulations and controlling law.

Here, in formulating Plaintiff's RFC, the ALJ accorded great weight to the opinions of reviewing physicians Dr. Bolz and Dr. Hughes, (Tr. 22), each of whom opined Plaintiff could work at the light exertional level with various postural and environmental limitations, based on (a) the prior ALJ decision and (b) the lack of any new and material evidence warranting any change in Plaintiff's RFC. (Tr. 71, 86; see Tr. 97). The ALJ additionally assigned partial weight to the opinions of reviewing psychologists Dr. Haskins and Dr. Finnerty. (Tr. 21-22). Dr. Haskins and Dr. Finnerty each concluded that "there was new and material evidence of an additional mental condition in the form of an anxiety disorder" causing moderate limitations and opined Plaintiff had the capacity "to perform simple and some multistep tasks that are not complex" in a setting not requiring "close sustained focus or sustained fast pace" (Tr. 21; see Tr. 69, 72-73, 84, 87-88). The ALJ further accorded partial weight to examining psychologist Dr. Chiappone's opinion, finding it to be "somewhat vague and not stated in well-defined terms." (Tr. 20-21). Indeed, in his narrative report of the consultative

9

examination, Dr. Chiappone opined only that Plaintiff "may have some difficulty remembering information[,]" "would have some difficulty maintaining concentration and attention[,]" and "may have some difficulty dealing with stress on a job" (Tr. 387-388).

With respect to Plaintiff's treating neurologist, Dr. Rorick, the ALJ assigned his findings little weight. In so concluding the ALJ determined that Dr. Rorick's severe limitations were "inconsistent with the evidence as a whole, including diagnostic imaging and physical and [sic] examination findings, [as well as Plaintiff's] activities of daily living." (Tr. 21).

Plaintiff contends that the ALJ's findings are not substantially supported in this regard. Notably, Plaintiff asserts that the ALJ erred in failing to afford controlling weight to the findings of Dr. Rorick by not giving "good reasons" for not accepting his limitations. As noted by the ALJ, despite his extreme functional limitations, Dr. Rorick's examinations consistently produced normal findings. (Tr. 18, 397-398, 405-406, 413-414, 750-751, 759-760). Namely, in 2014, Dr. Rorick noted Plaintiff was "able to control her pain with the pain medication regimen" and made all normal findings on examination, including detailed neurologic findings. (Tr. 395, 397-398). A December visit likewise resulted in normal findings. (Tr. 403-410). At a follow-up with Dr. Rorick at the start of 2015, Plaintiff reported frequent depression associated with increased stressors; she also reported her pain medication was helping but noted continued intermittent head pain. (Tr. 411). One month later, Dr. Rorick reviewed the April brain MRI, deemed it normal, and made normal examination findings. (Tr. 748-752). Additionally, in October, Plaintiff told Dr. Rorick her anxiety was under control with

medication and that she remained seizure free on medication, which she was "tolerat[ing] well." (Tr. 757). Dr. Rorick's relevant findings were normal. (Tr. 759-760).

In light of the foregoing, the undersigned finds that the ALJ properly evaluated Dr. Roricks finding and gave "good reasons" for his determination as required by Agency regulations and controlling law.

Next, citing *Blakley v. Com'r of Social Security*, 581 F.3d 399 (6th Cir. 2009), Plaintiff argues that the ALJ erred in giving more weight to the State Agency physicians because their findings were not based on a review of a complete case record. More specifically, Plaintiff contends that Dr. Bolz and Dr. Hughes did not review the more-recent evidence of record, including Dr. Rorick's opinion.

In *Blakley,* the Sixth Circuit reiterated the principle that "[i]n appropriate circumstances, opinions from State agency medical ... consultants ... may be entitled to greater weight than the opinions of treating or examining sources." Id., 581 F.3d at 409, quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *3 (July 2, 1996). The *Blakley* court reversed because the state non-examining sources did not have the opportunity to review "much of the over 300 pages of medical treatment ... by Blakley's treating sources," and the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consulting physician's opinions. *Id.*, 581 F.3d at 409 (quoting *Fisk v. Astrue*, 253 Fed.Appx. 580, 585 (6th Cir.2007)). Under *Blakley*, then, an ALJ may choose to credit the opinion of even a non-examining consultant, who has failed to review a complete record, but the ALJ should articulate his reasons for doing so. If the ALJ fails to provide sufficient reasons, the opinion still may be affirmed if

11

substantial evidence supports the opinion and any error is deemed to be harmless or de minimis.

Here, the ALJ's decision indicates that he evaluated all the later submitted evidence in weighing the opinion evidence and formulating Plaintiff's RFC. (See Tr. 20-22). See also *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (finding no error in ALJ's assignment of greater weight). As noted above, the ALJ properly considered all of the opinion evidence, including the findings of Dr. Rorick. The ALJ additionally considered the opinions of reviewing psychologists Dr. Haskins and Dr. Finnerty, reasonably according them partial weight. (Tr. 21-22). As the ALJ observed, Dr. Haskins and Dr. Finnerty each concluded that "there was new and material evidence of an additional mental condition in the form of an anxiety disorder" causing moderate limitations and opined Plaintiff had the capacity "to perform simple and some multistep tasks that are not complex" in a setting not requiring "close sustained focus or sustained fast pace." (Tr. 21; *see* Tr. 69, 72-73, 84, 87-88).

Additionally, Plaintiff also asserts that the ALJ somehow applied less scrutiny to the opinions of Drs. Bolz and Hughes than he had applied to Dr. Rorick's. (Pl.'s Brief at p. 6). Plaintiff fails to develop this argument in any meaningful way. See *Graber v. Colvin*, No. 1:12-CV-345, 2013 WL 3884182, at *4 (S.D. Ohio July 26, 2013), *report and recommendation adopted sub nom. Graber v. Comm'r of Soc. Sec.*, No. 1:12-CV-00345, 2013 WL 4482609 (S.D. Ohio Aug. 21, 2013) (It is not the Court's function to comb through the entire record to develop an argument on Plaintiff's behalf or to take the portions of the record cited by Plaintiff's counsel and attempt to craft an argument that supports the general issues he referenced in the most perfunctory

manner). Nonetheless, as discussed above, the ALJ based Plaintiff's RFC on the prior ALJ decision – to which he was bound absent new and material evidence warranting a change in RFC – and on the above-discussed additional objective medical evidence, which did not support a different RFC finding regarding Plaintiff's physical capacity. (Tr. 10, 16-19, 22, 97; see e.g., Tr. 264-265, 268-269, 275-276, 340, 397-398, 405-406, 413-414, 744-745, 750-751, 754-755, 759- 760, 764-765, 768-769, 772-773). See *Drummond,* 126 F.3d at 842-843; AR 98-4(6).

*3. Credibility*

Plaintiff argues next that the ALJ improperly evaluated Plaintiff's credibility. Specifically, Plaintiff contends that the ALJ erred in discounting Plaintiff's subjective complaints of pain relating to her headaches and mental impairments. Plaintiff also asserts that the ALJ improperly relied on Plaintiff's daily activities to discredit Plaintiff's disabling complaints. Plaintiff's contentions are not well-taken.

As Plaintiff has indicated, the ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96–7p.

13

Here, the ALJ's credibility analysis properly considered these factors. As detailed above, the objective evidence from the treating neurologists, primary care doctors, and emergency room staff, the findings by the examining psychologist, the opinions of the reviewing physicians, and Plaintiff's subjective reports to her treating sources, all combine to belie Plaintiff's allegations of disabling limitations. (Tr. 17-22). As such, this Court should not disturb the ALJ's decision. See 20 C.F.R. § 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) ("[A]n ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.' However, they must also be supported by substantial evidence.") (quoting *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir.1997).

Furthermore, the ALJ properly considered the fact that Plaintiff's physical and mental impairments did not prevent her from engaging in a wide variety of daily activities. (Tr. 29). See Soc. Sec. Ruling 96-7p, 1996 WL 374186. The ALJ noted that Plaintiff attended church services occasionally, and was able to "cook simple meals, perform light household tasks, pay bills, count change, handle a savings account, and use a checkbook and money orders." (Tr. 20 (citing Tr. 207-210, 383, 385-387, 476, 505, 867)).*See Smith v. Comm'r of Soc. Sec.*, No. 1:09–cv–526, 2010 WL 5464889, at *7 (S.D. Ohio Aug. 24, 2010) (Wehrman, MJ) ("the ALJ also properly considered that plaintiff engaged in a variety of daily activities, and it was appropriate for him to consider this factor in making his credibility finding").

In light of the foregoing, the ALJ's is substantially supported in this regard.

*4. Vocational Errors*

Plaintiff's final assignment of error asserts that the ALJ committed various vocational errors. Namely, Plaintiff asserts that the ALJ's hypothetical questions to the vocational expert failed to include Plaintiff's need to miss more than one day of work per month and that she would be off task for 1/3 of the work day. Plaintiff's assertions are unavailing.

The Sixth Circuit has held that a hypothetical question must only include a claimant's credible impairments and limitations. *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir.2001) (emphasis added); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993). Here, the ALJ's hypothetical question was supported by the medical record and other evidence, and Plaintiff has not shown that she had limitations greater than those reflected in the ALJ's hypothetical question and eventual RFC finding. However, as discussed above, the medical evidence did not support these alleged limitations, and there is no credible medical opinion that shows that Plaintiff had greater limitations than the ALJ found. Accordingly, the ALJ's decision is substantially supported in this regard.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

                                                  *s/Stephanie K. Bowman*
                                                  Stephanie K. Bowman
                                                  United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| FRANCES CHAMPION, | Case No. 1:17-cv-789 |
| Plaintiff, | Black, J. |
| | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).